UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| ANDREW H., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) | 1:18-CV-00499-LEW |
|  | ) |  |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) |  |
|  | ) |  |
| Defendant | ) |  |

## MEMORANDUM OF DECISION AND ORDER

Plaintiff Andrew H. requests judicial review of the Social Security Administration Commissioner's final administrative decision, wherein the Commissioner found Plaintiff not disabled and denied his claim for benefits under Title II of the Social Security Act. Following a review conducted pursuant to 42 U.S.C. § 405(g), for reasons set forth below, the final administrative decision is vacated.

## Standard of Review

My review is limited to "determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Provided the final administrative decision is supported by "substantial evidence" and was not "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts," it will stand. *Id.; Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In applying the "substantial evidence" standard, [I must] bear

in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence." *Applebee v. Berryhill*, 744 F. App'x 6 (1st Cir. 2018).

## Discussion

The administrative law judge (ALJ) found that Plaintiff, during the relevant period, retained the residual functional capacity (RFC) "to perform a range of sedentary work" involving simple, routine, repetitive tasks not performed at a production pace, simple decisions and changes in a routine setting, and only occasional interaction with the public, supervisors, and coworkers, including specific jobs existing in the national economy in significant numbers. ALJ Decision, R. 15, 21.

Plaintiff argues the ALJ erred when he (A) failed to explicitly state whether Plaintiff's post-traumatic stress disorder (PTSD) was a "severe impairment" at step 2, and then failed to give greater weight to certain expert assessments related to Plaintiff's mental capacity for work activity, including an assessment offered after the Disability Determination Services consultants conducted their review; (B) failed to substantiate the finding that Plaintiff can persist at sedentary work activity provided he can stand for five minutes every hour, particularly given the progression of Plaintiff's hip-joint impairment; and (C) failed to account for Plaintiff's obesity in the RFC discussion.[1]

---

[1] Plaintiff also argues the errors are not harmless because the ALJ supplied the vocational expert with an inadequate RFC hypothetical at step 5.

2

### A. Post-Traumatic Stress Disorder

Plaintiff's challenge concerning his mental capacity to perform substantial gainful activity is based on the ALJ's treatment of the medically determinable impairment of post-traumatic stress disorder (PTSD) and certain evaluations concerning Plaintiff's mental capabilities. The question for the Court is whether the ALJ's discussion of the material evidence of record, in particular the assessments offered by Dr. Wesley, Dr. Suyeishi, and Dr. Cotgageorge, is such that a reasonable mind could accept it as adequate to support the ALJ's mental RFC findings.

At step 2, the ALJ did not itemize post-traumatic stress disorder as a severe mental impairment, but rather found the severe mental impairments to be affective disorder and "anxiety-related" disorder.[2] R. 13. However, at step 3, the ALJ identified Listing 12.15 (trauma- and stressor-related disorders) as applicable to Plaintiff's claim, demonstrating the ALJ's understanding that Plaintiff's alleged mental impairment is due, in part, to a traumatic experience. At step 3, the ALJ found moderate limitation in all of the paragraph B criteria of the mental listings. While the moderate findings precluded a disability decision based on listing-level impairment, they also adequately communicated the ALJ's appreciation that Plaintiff experiences significant mental impairment due to trauma-related anxiety. R. 14.[3] A remand based on the omission of PTSD at step 2 is, on this record, not warranted. Nor is it apparent that the ALJ erred in his mental RFC finding.

---

[2] The ALJ also recognized as severe traumatic brain injury, but the sequelae of brain injury are not a focus of Plaintiff's challenge.

[3] Plaintiff does not contend his mental impairment meets or equals Listing 12.15 or any other listing.

3

On December 30, 2015, Immaculate Wesley, Psy.D., performed a psychological evaluation of Plaintiff. At the evaluation, Plaintiff indicated that his mental health impairment involved memory, comprehension, and lack of organization. Ex. 6F, R. 580. Of note, Plaintiff was involved in motor vehicle accidents in 2001 and 2002 and suffered head trauma in both accidents. *Id.* Concerning Plaintiff's psychiatric condition, Dr. Wesley noted that Plaintiff, at the time, had "no history of mental health treatment or hospitalization." R. 581. Plaintiff nevertheless described an inability to function two or three days per week due to pain and depression. R. 582. Based on the treatment history and a mental status examination, Dr. Wesley provided his diagnostic impression that Plaintiff has PTSD, pain disorder, social phobia, and narcissistic traits. R. 582. Dr. Wesley indicated that Plaintiff's report of short-term memory problems was not substantiated by Dr. Wesley's observation and that understanding, memory, and sustained concentration appeared to be adequate; but Dr. Wesley suspected Plaintiff experiences marked limitation secondary to chronic pain and social phobia, and that traumatic brain injury and PTSD would cause a marked difficulty dealing with normal pressure in a work setting. R. 583.

On January 1, 2016, Mark Suyeishi, Psy.D., performed the psychiatric review technique and provided a mental RFC assessment. Dr. Suyeishi considered not only Dr. Wesley's report but also the evidence contained in Plaintiff's treatment records. Ex. 4A, R. 108. Dr. Suyeishi assessed a moderate impairment in the areas of social functioning and maintaining concentration, persistence, and pace. R. 109. Dr. Suyeishi observed the absence of any history of depression and anxiety and the remote character of Plaintiff's traumatic brain injury. He also observed that Plaintiff's records reflected repeated entries

indicating normal memory and orientation, with appropriate mood and affect. Based on these considerations and Dr. Wesley's observation of Plaintiff, Dr. Suyeishi opined that Plaintiff appeared suited for "some types of work." R. 110. He did not give weight to Dr. Wesley's statement concerning the limiting effect of chronic pain and observed that Dr. Wesley had not performed a physical exam. He also indicated that the pain-related assessment appeared to be beyond Dr. Wesley's expertise. According to Dr. Suyeishi, Plaintiff should be "capable of less complex tasks." *Id.*

Turning to his mental RFC assessment, Dr. Suyeishi did not find persuasive Dr. Wesley's suggestion of marked impairment in social functioning. Dr. Suyeishi observed that Plaintiff walked his child to school and that there was no evidence of agoraphobia. R. 114-15. He did, however, regard Plaintiff as "capable of less interpersonal," which he described as precluding close work with supervisors and coworkers, as well as "frequent or prolonged" contact. R. 115. Otherwise, Dr. Suyeishi opined that Plaintiff would be capable of simple tasks, R. 114, including "work of limited complexity but which requires accuracy and attention to detail." R. 115.

In October 2016, Plaintiff received a neuropsychological assessment. Plaintiff reported to Ed Cotgageorge, Ph.D., that he experienced, among other things, "constant panic," avoidance of people, irritability, and "other anxiety symptoms." Ex. 13F, R. 722. In a summary of findings, Dr. Cotgageorge assessed "mild to moderate" impairment of attention and concentration and indicated the results reflected a person who "likely experiences at least some mild cognitive difficulties secondary to anxiety." *Id.* Overall cognitive functioning was characterized as "within normal functioning limits," but

"sufficient to interfere with the performance of work." *Id.* Dr. Cotgageorge gave his diagnostic impression as traumatic brain injury cognitive disorder and chronic PTSD. R. 723. Describing Plaintiff's mental health history, Dr. Cotgageorge wrote that Plaintiff "denied any mental health problems or treatments until recently," and a recent start of medication to address "mood swings." *Id.* Dr. Cotgageorge's mental status assessment does not stand out as suggestive of mental disability.[4] Nor do his entries related to thought disorder screening or depression screening, though symptoms were appreciated. R. 725. Concerning social capacity, Dr. Cotgageorge did not find symptoms associated with a specific phobia and Plaintiff reported that medication helped his symptoms. *Id.* However, concerning anxiety, Dr. Cotgageorge opined that Plaintiff "is likely severely restricted because of his anxiety," where "[e]ven mild stressors likely precipitate a crisis." R. 728.

Based on my review of the record, I am not persuaded that Dr. Cotgageorge's assessment undercuts the ALJ's decision to give great weight to the mental RFC opinion of Dr. Suyeishi. Furthermore, a reasonable mind could well accept as adequate the ALJ's reasoning concerning Plaintiff's mental RFC. Indeed, a reasonable mind might well conclude that even Dr. Cotgageorge's report is not inconsistent with ALJ's mental RFC findings, which significantly reduce social demands and stressors.

---

[4] Dr. Cotgageorge noted Plaintiff's report that his PTSD symptoms are the product not of his auto accidents, but rather of the death of fellow firefighters in a fire that he alone escaped. R. 725, 728.

## B. Sedentary Exertion with a Sit-Stand Modification

Plaintiff next asserts the ALJ's RFC was not supported by substantial evidence because the plaintiff submitted a January, 2018 hip x-ray, which evidence "reflects that the Plaintiff's left hip condition continued worsening after State agency review." Statement of Errors 14.

Plaintiff has longstanding bilateral hip dysfunction and also experiences some left lower extremity radicular symptoms due to a lumbar spine disorder. On February 17, 2016, David Bristow, M.D., reviewed Plaintiff's medical records, including x-ray images taken in 2013 and 2016[5], and he opined that Plaintiff's subjective report of symptoms was not fully supported by the objective evidence. Ex. 4A, R. 110-11. Dr. Bristow indicated that Plaintiff should be able to lift and carry at the light-exertion level, but stand and walk for only four hours in a workday. R. 111. Dr. Bristow did not call for a sit-stand option, and thus considered Plaintiff more capable than the ALJ found. *Id.* In rendering his opinion, Dr. Bristow noted that he assessed greater limitation than a prior reviewer of record, and he made specific reference to the fact that Plaintiff has, *inter alia*, moderate degenerative joint disease, some sensation deficits in the left lower extremity, and a high body mass index (BMI).[6] R. 113.

---

[5] The January 30, 2016, x-ray report describes an "extremely limited exam" but confirms "moderate hip joint space narrowing and bony spurring about the acetabulum," with no evidence of fracture. Ex. 8F, R. 625.

[6] Among the items reviewed by Dr. Bristow was the 2013 occupational therapy report of Greg Vanichkachorn, MD, MPH. Ex. 2F, R. 466-468. Dr. Vanichkachorn indicated that Plaintiff was at maximum medical improvement and that Plaintiff indicated he did not believe he could work more than six hours, four days per week. R. 468. Dr. Vanichkachorn stated he did not have cause to disbelieve the representation, but also that he lacked "objective indications that would clearly indicate that the patient is

7

Plaintiff obtained two additional x-ray views of his left hip on January 22, 2018. Ex. 18F, R. 1167. The report indicates "deformity of the left femoral head with lucency involving the articular surface superiorly" and the "possibility of avascular necrosis involving the femoral head." *Id.* Plaintiff's outpatient provider, Carmen Crofoot, M.D., reviewed the images and performed a physical examination. Given her findings, which included hip contracture, Dr. Crofoot recommended a total hip arthroplasty, but advised that Plaintiff would have to reduce his BMI and gain better control of his diabetes before undergoing the procedure, something Plaintiff apparently reported he can do. Dr. Crofoot did not see, however, any "contraindication in participating in low-impact activities." Ex. 19F, R. 1171.

The ALJ indicated that he gave "great weight" to the opinion of Dr. Bristow (and the other Disability Determination Services physicians) that, "overall," Plaintiff "is not disabled," but the ALJ also stated that he departed from the recommended light-work capacity because "the medical evidence of record supports finding that the claimant can perform a wide range of sedentary work." R. 19. In a subsequent summary, the ALJ explained that his RFC findings were substantiated, in part, by "x-rays showing only mild abnormalities." R. 20, citing Ex. 2F, R. 491 (a lumbar spine x-ray). In this context, the ALJ did not mention the 2018 images of the left hip joint.

Based on my review of the evidence, I am persuaded that the ALJ's findings are supported by substantial evidence for much of, but not the entire period of alleged

---

unable to work full duty." *Id.* I do not see why the ALJ would be compelled to find less than full time work capacity based on this evidence.

8

disability. Plaintiff alleges onset of disability in 2013, and I cannot see how the record precludes the ALJ's reliance on Dr. Bristow's opinion for much of the period under consideration. However, Plaintiff's date last insured is September 30, 2017, and the January 2018 x-ray and physical examination findings of Dr. Crofoot persuade me that the ALJ's physical RFC finding rests heavily on a lay assessment of medical evidence insofar as progression of left hip degenerative joint disease is concerned. While it is by no means certain that Plaintiff has demonstrated that he was disabled prior to the expiration of his insured status, he deserves an assessment based on something more than the existing lay interpretation of the January 2018 findings.

**C. Obesity**

Plaintiff separately argues a remand is warranted based on the ALJ's failure to discuss at greater length the functional implication of Plaintiff's obesity. Plaintiff has long had a high BMI, but there is good indication in the record that this is the product of significant musculature rather than simply a matter of deconditioning.[7] On remand, the implications of the obesity should be evaluated, but Plaintiff has not persuaded me that the ALJ's failure to discuss obesity at any length undercuts the ALJ's RFC opinion for much of the period under consideration. In particular, I note that Dr. Bristow explicitly indicated that he appreciated and accounted for Plaintiff's body mass in his physical RFC assessment.

---

[7] Ex. 19F, R. 1171. Consistently, Dr. Cotgageorge described Plaintiff as appearing "somewhat over weight for his height." R. 724.

## Conclusion

Defendant's final administrative decision is vacated, and the matter is remanded for further proceedings.

**SO ORDERED.**

Dated this 8th day of July, 2019.

/s/ Lance E. Walker<br>U.S. DISTRICT JUDGE